# ARTZ HEALTH LAW
## ATTORNEYS AT LAW

| | |
|---|---|
| **HARRISBURG OFFICE** | **PHILADELPHIA OFFICE** |
| 200 NORTH THIRD STREET | CENTRE SQUARE, WEST TOWER |
| 12TH FLOOR, SUITE 12-B | 1500 MARKET STREET, SUITE 4100 |
| HARRISBURG, PA 17101 | PHILADELPHIA, PA 19102 |
| | |
| (717) 238-9905 | (267) 886-1852 |
| FAX (717) 238-2443 | FAX (215) 735-1714 |
| | |
| CHARLES I. ARTZ, ESQ. | MICHAEL J. McCARRIE, ESQ. |
| CIA@ARTZHEALTHLAW.COM | MJM@ARTZHEALTHLAW.COM |
| | |
| April L. McCLAINE, ESQ. | |
| ALM@ARTZHEALTHLAW.COM | |

June 16, 2014

The Honorable Sylvia H. Rambo
United States Courthouse
228 Walnut Street
Harrisburg PA  17108

  Re: **Commonwealth of PA Department of State v. Lawrence Herman, D.C.**
     **Docket No.: 1:CR-13-244-01**

The Honorable Judge Rambo:

  Enclosed please find the Sentencing Memorandum of Defendant, Lawrence S. Herman in reference to the above matter. A copy of this letter has also been sent to Kim D. Daniel, Esquire.

              Respectfully submitted,

              MICHAEL J. McCARRIE, ESQUIRE

MJM/lab
Enclosures
cc:  Kim D. Daniel, Esquire

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | DOCKET NO. 1:CR-13-244-01 |
| | : | |
| LAWRENCE S. HERMAN | : | |
| Defendant | : | |

**SENTENCING MEMORANDUM OF DEFENDANT, LAWRENCE S. HERMAN**

Defendant, Lawrence S. Herman, hereby submits this Sentencing Memorandum, urging the Court to spare him incarceration of any sort.

Mr. Herman, a forty eight (48) year old chiropractor by profession, was a passenger in a vehicle whose driver was insured by USAA Insurance Group. Mr. Herman feigned injuries from an actual automobile accident in order to secure a payment from the insurance carrier. Mr. Herman made a claim to the carrier for chiropractic treatments in the amount of Seventeen Thousand Five Hundred Twenty Seven ($17,527.00) Dollars. Months later, Mr. Herman hired a lawyer, who formulated a Sixty Thousand ($60,000.00) Dollar demand on the carrier which included the Seventeen Thousand Five Hundred Twenty Seven ($17,527.00) Dollar claim for chiropractic treatments. The insurance carrier rejected the claim, and suffered no loss. Mr. Herman has cooperated in the Government's investigation and has pled guilty to one count of making "false statements relating to healthcare matters" under 18 U.S.C., §1035.

Mr. Herman urges the Court to allow variances in the offense calculation computed by the Probation Office. If these variances are allowed, Mr. Herman's offense score would result in probation under the Guidelines.

In addition, Mr. Herman urges that the relevant facts under the Guidelines should result in a sentence which does not include incarceration. Mr. Herman's crime was an isolated mistake in a law abiding life; Mr. Herman's unfortunate personal circumstances contributed to the crime; the crime has already had a significant adverse effect on Mr. Herman's personal life; the offending conduct will not be repeated; the incident stands in stark contrast to Mr. Herman's commitment to his community and family; and a sentence that does not include incarceration would spare burdening the limited resources of the federal prison system with an offender who does not deserve incarceration as a matter of punishment, rehabilitation or deterrence from future misconduct.

For the reasons more fully stated below, we respectfully submit that the sentence imposed by the Court should not include incarceration.

I. **VARIANCES FROM THE GUIDELINES ARE JUSTIFIED, WHICH IF GRANTED WOULD NEGATE INCARCERATION.**

Paragraph 16 of the Pre-Sentence Report (the "PSR"), addressing "specific offense characteristics," states that "Because the intended loss in this case was more then Thirty Thousand ($30,000.00) Dollars but less than Seventy Thousand ($70,000.00) Dollars, six levels are applied pursuant to U.S.S.G. §2B1.1 (b)(1)(D)." The PSR calculates a total offense level of 12 and a custody range of 10 to 16 months (Zone C). See Paragraph 55.

First, the facts concerning the economic reality of the loss, and the absence of any actual loss, justify a downward variance in the "intended loss" factor, which would result in a decrease of two points in the offense level computation.

Second, examination of the issues relating to Mr. Herman's control and authority in connection with the crime justify a downward variance in the aggravating role which

the PSR ascribes to him. This would result in an additional decrease of two points in the offense level computation.

These two variances together would reduce the offense level to 8 (where the Guidelines do not call for incarceration). Each variance is discussed below.

A. **A Variance From the Guidelines is Justified Based on the Lack of "Economic Reality" to the Intended Loss and the Absence of Actual Loss.**

The offense with which Mr. Herman is charged is "false statements relating to healthcare matters" under 18 U.S.C. §1035. That statute makes illegal, "in any matter involving a health care benefit program," false or fraudulent statements "in connection with the delivery of or payment for health care benefits, items or services."

The PSR states the following with respect to the charged offense:

1. Mr. Herman was a passenger in a vehicle insured by USAA. He filed a claim with USAA as a result of an actual automobile accident taking place on August 16, 2011, claiming that he had pain in his lower back and neck, numbness in his fingers, and was seeing a chiropractor for his injuries. The accident in fact had left Mr. Herman "shaken up."

2. Mr. Herman mailed an extensive set of chiropractic treatment records to the insurance company on May 2, 2012, which itemized $17,527.00 of charges for thirty-three patient encounters, including $1,889.00 for various items of durable medical equipment. These charges were reflected in a letter of Dr. Tiffany Russell, which represented that Mr. Herman had paid for these services in full out of his own pocket, which Mr. Herman confirmed separately.

3. Months later, Mr. Herman retained a Baltimore law firm to represent him. By letter dated October 1, 2012 the law firm demanded $60,000.00 Dollars to settle Mr.

3

Herman's claim. This was five months <u>after</u> the treatment records were sent to the insurance company. The $60,000.00 demand consisted of $17,527.00 for reimbursement of chiropractic treatment expenses, with the remainder for pain and suffering.

4. Mr. Herman has been charged only with one count of violation of 18 U.S.C. §1035, on account of filing false statements <u>with respect to the $17,527.00 of chiropractic treatment expenses</u>.

5. The insurance company made no payments to Mr. Herman. The PSR states that it appears that there was no loss as the insurance carrier did not pay what it considered to be fraudulent claim. PSR Paragraph 11.

Under Section 2B1.1 of the Guidelines, a downward departure is appropriate where the actual loss is less then the "intended loss." Here, the PSR characterizes the "intended" loss as $60,000.00. However, the charging offense is based upon making false statements in connection with the payment of healthcare benefits. Necessarily, the offense is predicated upon the request for $17,527.00 in healthcare benefits. The "actual" loss was zero. In cases where such a disparity exists, a variance is appropriate.

In the context of seeking a variance, and not in any way negating Mr. Herman's recognition of his culpability for the charging offense, Mr. Herman directly caused false statements to be made only to the extent of the payment of the healthcare benefits on account of alleged treatment. The balance of the $60,000.00 "intended loss" was a demand for pain and suffering. This distinction is important for two reasons.

First, a demand for pain and suffering is a judgment matter within the realm of the lawyer's art (and not the client's). The attorney who crafted the demand letter to the carrier framed the amount of the pain and suffering demand. This was an arbitrary

4

number chosen, by the attorney, undoubtedly with the idea of creating an incentive to negotiation and establishing room to obtain a compromise number. The resulting compromise would most likely have been <u>less than $30,000.00</u>, and once legal fees on a contingent basis are taken into account, it is a virtual certainty that any payment to Mr. Herman would be less than $30,000.

Second, such a demand is known - - especially to insurance companies - - to represent a number designed to build up the claim for negotiation purposes. Thus, not only did the attorney who prepared the demand select the number, the number was known by the recipient (as well as the sender) not to have "economic reality."

While the demand amount represents a theoretically <u>permissible</u> amount to consider in quantifying the intended loss, its lack of economic reality nevertheless can constitute the basis for a departure from the guidelines to a number less than $30,000.00, creating a downward adjustment of two pints. See <u>United States v. McBride</u>, 362 F. 3d 360, 374,376 (6th Cir. 2004) ("[T] here is surely some point at which a perpetrator's misperception of the facts may become so irrational that the words "intended loss" can no longer reasonably apply.")

B.  **<u>A Variance From the Guidelines is Justified Based on A Proper Understanding of Mr. Herman's Role In the Crime.</u>**

Paragraph 18 of the Pre-Sentence Report, addressing the adjustment for role in the offense, states the following:

> The Defendant directed his employee, Dr. Russell, to prepare a set of bogus treatment records. It appears that a two-level enhancement for aggravating role is warranted pursuant to U.S.S.G. §3B1.1(c), because Herman was an organizer,

5

> leader, manager, or supervisor in any criminal activity other than that described in U.S.S.G. §3B1.1(a) and (b).

In point of fact, Mr. Herman should not be deemed to have an aggravating role in any criminal activity as described in the Sentencing Guidelines. This must be addressed in two contexts, both of which are offered in support of a variance with respect to Mr. Herman's alleged aggravated role, not in negation of Dr. Herman's recognition of culpability for the charged offense.

First, one must look at the degree of control and authority exercised in the case of Dr. Tiffany Russell. She came up with the "ideal" chiropractic treatment plan she formulated, fabricating the nature and extent of the treatment she provided Mr. Herman and his reported pain levels. She collaborated, but was not directed, to commit that conduct. There is no inkling that she was forced to go along at the risk of her job or other personal benefit. In fact, not only was she not subjected to pressure to collaborate, she may well have - -on her own initiative- - perceived a potential personal economic benefit (e.g., professional advancement) if she did so. In that event, she could be deemed equally culpable in the conduct documenting the claim.

Second, as discussed above, the attorney representing Mr. Herman crafted the demand letter, which he was authorized to do in open-ended fashion. While Mr. Herman may have requested creation of the demand and approved its contents once created, it would be inappropriate to penalize Mr. Herman for a judgment call made by his legal representative in establishing the initial demand as a benchmark from which the attorney expected to negotiate.

6

A downward departure from the two-level enhancement, based on an aggravated role, would be appropriate.

## II. IN ANY EVENT, INCARCERATION OF MR. HERMAN WOULD NOT BE APPROPRIATE.

Apart from the two variances to adjust the offense level of 12, other factors under the Guidelines negate incarceration of any sort as an appropriate sentence, and persuasively demonstrate why incarceration of any sort, even house arrest, is inappropriate.

First, this case represents an isolated mistake in Mr. Herman's otherwise law abiding life. Mr. Herman seized on the fortuity of an actual auto accident to create a false claim for personal injury. The claim was obviously a non-violent act. The offense was a "one-shot" occurrence, growing out of the "opportunity" created by a single, isolated and unexpected event. The offense was a crime of fortuitous opportunity, however, misguided the judgment in seizing upon that opportunity. The offense was personal and did not involve any patient of the chiropractic practice. This was not a criminal enterprise being led or directed by Larry Herman but merely a one time event subsequent to an automobile accident. While Mr. Herman fully recognizes the nature of this criminal act, we ask that the Court understand his one-time aberration.

In the context of Mr. Herman's entire law abiding life, the offense for which he has pled guilty can be characterized as an isolated mistake warranting a departure pursuant to U.S.S.G. §5K2.20. We therefore respectfully request a departure from the guideline range, pursuant to United States v. Booker, 543 U.S. 220 (2005), on the basis of the significant §3553(a) factors and that this case represents the sole aberrant mistake in Dr. Herman's life. See U.S. v. Servino, 454 Fed. 3d 206, 211 (3rd Cir. 2006) ("we agree

with the guidance of other Courts that after <u>Booker</u> a Guidelines Departure Prohibition does not preclude the District Court from considering that factor on the issue of a Variance under <u>Booker</u>.") (citation omitted).

Second, Mr. Herman's unfortunate personal circumstances are essential to assessing a proper sentence. The incident in this case occurred on the heels of the traumatic divorce proceedings and negotiations surrounding the children's living arrangements and various financial obligations attendant to the same. Mr. Herman's divorce decree was signed on 7/27/11 and filed with the Clerk of Court on 8/5/11, proximate to the time of the offense. Personal stresses, provided by work pressures and economic circumstances resulting from the divorce, weakened Mr. Herman's judgment and contributed to precipitating the infraction. While this is not an excuse for the criminal conduct or a shift of responsibility, it is only meant to put this aberrant behavior in the context of an otherwise law abiding life.

Third, this case has already had a significant adverse impact on Mr. Herman's personal life. It has been an embarrassment, and has resulted in a loss of standing in his small community and a significant loss in his business. Currently, the Pennsylvania Chiropractic Board has issued an Order to Show Cause seeking to "revoke, suspend or limit" his professional activity as a chiropractor.

These setbacks have been met with an individual who has re-dedicated himself to the appropriate standards of behavior. The steps taken by Mr. Herman in acknowledging his personal failure and his cooperation and admissions to the government reflect his understanding of the seriousness of the offense in this case. The emotional punishment of accepting and confessing to responsibility have indelibly affected Mr. Herman.

Fourth, the offending conduct will not be repeated. In light of Mr. Herman's age and the fortuitous gestation of the offense, there is no risk of re-offense. Mr. Herman understands his error, and has voluntarily accepted responsibility for it. Mr. Herman has already inflicted upon himself emotional punishment, even without sentencing. His self-inflicted ruination includes the consequences of the painful process of accepting and confessing to responsibility.

Fifth, this isolated incident stands in stark contrast to Mr. Herman's commitment to his community, his family and charitable work. In fact, Mr. Herman has strong community support, which demonstrates not only the aberrant nature of the misconduct and that he will not reoffend, but that he should remain a part of the community.

Finally, a sentence that does not include incarceration will spare the cost of incarceration and avoid burdening the limited resources of the federal prison system with an offender who does not deserve incarceration either as a matter of punishment, rehabilitation or deterrence from future misconduct. It will also allow Mr. Herman to continue his work as a chiropractor, at least pending the outcome of proceedings before the Pennsylvania Board of Chiropractic, and to continue to engage in his efforts to contribute to the community.

## CONCLUSION

For the reasons stated above, Defendant Herman respectfully requests that he be se4ntenced to probation, based on the appropriateness of two downward departures as set forth above and the other reasons why this case does not present a case for any incarceration.

Respectfully submitted,

**ARTZ HEALTH LAW**

By: *[signature]*
Michael J. McCarrie, Esq. I.D. No. 57671
1500 Market Street – Suite 4100
Philadelphia, PA 19102
(267) 886-1852
Attorney for Defendant

Dated: June 16, 2014

# CERTIFICATE OF SERVICE

I, MICHAEL J. McCARRIE, ESQUIRE, hereby certify that a true and correct copy of the foregoing Sentencing Memorandum was served upon the following counsel of record by electronic service on this 16th day of June, 2014:

Kim D. Daniel, Esquire
P.O. Box 11745
Room 217, Federal Building
Harrisburg, PA 17108
Kim.Daniel@usdoj.gov

BY: _____
MICHAEL J. McCARRIE, ESQUIRE
Attorney for Defendant, Lawrence S. Herman